**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

MUHAMMAD NUMAAN IMAM; and KHADIJAH MANSOOR,

*Plaintiffs,*

v.

MARKWAYNE MULLIN, *in his official capacity as Secretary of the Department of Homeland Security;* RODNEY S. SCOTT, *in his official capacity as Commissioner, U.S. Customs and Border Protection*; CHRISTINE WAUGH, *in her official capacity as Area Port Director, U.S. Customs and Border Protection, Area Port of Washington, D.C. (Washington Dulles International Airport), or her successor in office*; and UNKNOWN CBP OFFICERS 1–10, *in their official capacities,*

*Defendants*.

**CASE NO. 1:26-cv-03499**

JURY DEMAND

RELATED CASE: *Blumenthal v Mullin*
1:26-cv-02629-LMB-IDD

**TIME-SENSITIVE MOTION FOR RETURN OF ELECTRONIC DEVICES UNLAWFULLY SEIZED BY CUSTOMS AND BORDER PROTECTION (CBP) AND OF ANY CONTENT OBTAINED THEREFROM, PURSUANT TO FED. R. CRIM. P. 41(g), AND REQUEST FOR EXPEDITED HEARING**

Pursuant to Rule 41(g)[1] of the Federal Rules of Criminal Procedure, Plaintiffs Muhammad Numaan Imam and Khadijah Mansoor move for the immediate return of four electronic devices

[1] Rule 41(g) provides:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where

seized by U.S. Customs and Border Protection (CBP) officers at Washington Dulles International Airport on October 16, 2026: two iPhone 16 smartphones and two laptops (one Micro-Star International and one Microsoft Surface Pro). CBP confiscated these devices after Plaintiff Imam declined to provide the passcode to his phone because it contained confidential patient information, including sensitive mental health and substance use treatment records. Although Plaintiffs informed officers that one of the laptops belonged to Plaintiff Mansoor, they seized both Plaintiffs' phones and laptops without identifying any individualized suspicion or explaining the basis for their continued retention. Plaintiffs seek the immediate return of their devices; return and/or destruction of any information copied or retained from them; an order prohibiting further examination of the devices pending judicial review; and a hearing on Friday 10/23/2026.

As described in more detail below, Plaintiffs are suffering acute, ongoing harm as a result of violations of their constitutional and statutory rights. Moreover, Plaintiffs' smartphones and laptops contain personal information that they do not wish to be viewed by strangers, as well as work product, and are necessary for Plaintiffs to do their jobs. In short, they are entitled to the immediate return of their devices, as well as any data obtained from them.

## FACTUAL BACKGROUND

Plaintiff Muhammad Imam is a 35-year-old United States citizen, married to 25-year-old Plaintiff Khadijah Mansoor, a Lawful Permanent Resident of the United States and citizen of Pakistan. *See* Declaration of Muhammad Imam, Exhibit 1 (Imam Decl.), ¶¶ 1-2; Declaration of Khadijah Mansoor, Exhibit 2 (Mansoor Decl.), ¶ 1. Plaintiffs are the parents of a one-year-old

---

> the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g) (2005).

child, and are temporarily living in Norfolk, Virginia for Plaintiff Imam's contractor job, though their permanent residence is in Florida. *See* Imam Decl., ¶¶ 1-3; Mansoor Decl., ¶¶ 1-2. Plaintiff Imam is a psychiatric nurse practitioner, and Plaintiff Mansoor is a software engineer. Imam Decl., ¶ 3; Mansoor Decl., ¶ 2. Neither Plaintiff is, to his or her knowledge, the subject of any pending investigation; nor is there a search or arrest warrant or other judicial process authorizing the seizure and continued retention of their electronic devices. Imam Decl., ¶ 5; Mansoor Decl., ¶ 4.

Plaintiffs regularly travel abroad for pleasure, and have visited a number of foreign countries over the past five years. Imam Decl., ¶ 6; Mansoor Decl., ¶ 5. On October 15, 2026, Plaintiffs and their infant child departed from Dulles International Airport in Virginia for a family trip to Istanbul, Turkey. Imam Decl. ¶ 7; Mansoor Decl. ¶ 6. Upon arriving in Istanbul following a 9-hour flight, Plaintiff Mansoor realized that she had forgotten her United States Permanent Resident card at home. Turkish authorities would not accept her Pakistani passport or a photograph of her Permanent Resident card in its stead and therefore denied her entry into the country. Imam Decl., ¶¶ 7-9; Mansoor Decl., ¶ 7-9. After spending approximately 10 hours at the Istanbul airport attempting to resolve the issue with Turkish authorities and arranging return travel, Plaintiffs and their child boarded a 12-hour flight back to Dulles Airport. Imam Decl., ¶ 11; Mansoor Decl., ¶¶ 8-10.

The family arrived at Dulles on October 16, 2026, at approximately 9:45 p.m. Imam Decl., ¶ 12; Mansoor Decl., ¶ 10. By that point, they had been traveling for more than 30 hours and were exhausted from lack of sleep and caring for their infant child throughout the journey. Imam Decl., ¶12; Mansoor Decl., ¶ 11.

At customs, Plaintiffs explained why they had returned to the United States so soon after arriving in Istanbul. A CBP officer informed Plaintiff Imam that he had been flagged in the system

but provided no explanation as to why. Imam Decl., ¶ 13. After placing Plaintiffs' passports in a locked box, officers escorted the family to a secondary screening area for questioning. Imam Decl., ¶¶ 13-14; Mansoor Decl., ¶¶ 12-13.

About 10 CBP officers were present in the secondary screening room. Imam Decl., ¶14; Mansoor Decl., ¶¶ 13. One of them took Plaintiff Imam aside and questioned him for about 20 minutes, asking where he worked, whether he had social media accounts, and about friend groups on his phone. Imam Decl., ¶15. Plaintiff Imam responded that he was a psychiatric nurse practitioner and informed the officer that he could not recall the names of his group chats as several were inactive. *Id*.

Afterward, CBP officers accompanied Plaintiff Imam to baggage claim to retrieve the family's checked luggage. Imam Decl., ¶ 16; Mansoor Decl., ¶ 14. During this time, Plaintiff Mansoor waited in the secondary screening area with their infant child, where an officer asked about her Lawful Permanent resident card, and she again explained why she did not have it with her. Mansoor Decl., ¶¶ 14-15. After speaking with another CBP officer, that officer returned and handed her back her Pakistani passport. *Id.* ¶ 15.

Plaintiff Imam returned with the family's luggage, and CBP officers searched it while Plaintiffs were separated, though they could see each other. Imam Decl., ¶¶17-18; Mansoor Decl., ¶¶ 16-17. A CBP officer asked Plaintiff Mansoor where she was traveling, why, for how long, whom she was visiting, and whether she intended to return to Turkey. Mansoor Decl., ¶17. She answered all of their questions. *Id.*

CBP officers asked Plaintiff Imam to enter the passcode to his iPhone 16, but he declined, explaining that his phone contained confidential patient information that he was professionally and ethically required to protect. Imam Decl., ¶¶ 18, 24; Mansoor Decl., ¶ 18. The officers told

Plaintiff Imam that the Fourth Amendment did not apply to his situation, and that they possessed technology capable of filtering out HIPAA protected patient information, which CBP attorneys would review. Imam Decl., ¶19. When Plaintiff Imam requested to speak with his attorney to understand his rights, officers responded with words to the effect of, "Your lawyer cannot do anything. We are the authorities at the border." Imam Decl., ¶ 20. After Plaintiff Imam continued to refuse to provide his phone's passcode, officers summoned a CBP supervisor to exert additional pressure on him. Imam Decl., ¶ 22. This officer told him that HIPAA did not apply and that, because of his refusal, CBP would confiscate the couple's two laptops. Imam Decl., ¶¶ 19, 21-22; Mansoor Decl., ¶ 18. Plaintiff Imam's laptop is a MicroStar International, and Plaintiff Mansoor's is a Microsoft Surface Pro. Imam Decl., ¶ 26; Mansoor Decl., ¶ 21. Plaintiffs informed the officers that one of the laptop computers belonged to Plaintiff Mansoor. Imam Decl., ¶ 22; Mansoor Decl., ¶ 18.

After about half an hour, another CBP supervisor arrived and informed Plaintiffs that they could do things the "easy way or the hard way"; that CBP could access all information contained on their devices; and that the process could take months. Imam Decl., ¶ 23; Mansoor Decl., ¶ 19. After Plaintiff Imam reiterated his concerns about confidential patient information, the supervising CBP officer stated that confidential information on Plaintiff Imam's phone could be filtered out, and that confidentiality laws protected him and his patients. Imam Decl., ¶ 24; Mansoor Decl., ¶ 20. Nevertheless, Plaintiff Imam declined to provide his passcode, and CBP officers then demanded Plaintiff Mansoor's iPhone 16 without asking for a passcode. Imam Decl., ¶ 25; Mansoor Decl., ¶ 21. In the end, CBP officers confiscated each Plaintiff's laptop and phone and provided receipts and contact information for them to inquire about the devices, but did not provide a timeline for their return. Imam Decl., ¶¶ 26-27; Mansoor Decl., ¶¶ 22-23.

Finally, CBP officers permitted Plaintiffs and their infant son to leave at approximately 1:00 a.m. on October 17, 2026, after about three hours of questioning. Imam Decl., ¶ 28; Mansoor Decl., ¶ 24. Given their reliance on technology (like most people these days) it was difficult for Plaintiffs to navigate the four-hour drive home and communicate with concerned family members without either their phones or their laptops. Imam Decl., ¶ 28; Mansoor Decl., ¶ 24. About 12 hours later, at 1:37 p.m., Plaintiff Imam received an email from CBP informing him that his Global Entry Membership, which he had attained on February 6, 2024 and maintained without incident since that date, had been revoked because he did not meet the "trusted traveler standard." Imam Decl., ¶ 30; Global Entry Email (Exhibit 3).

Both Plaintiffs are suffering hardship due to the deprivation of their electronic devices, which they use for personal and professional reasons. Imam Decl., ¶¶ 31-35; Mansoor Decl., ¶¶ 25-28. Plaintiff Imam uses his phone for his job, so it contains sensitive mental health and substance use treatment plans of his patients. Imam Decl., ¶ 33. In addition, he is a 24/7 on call provider at the American Society for Addiction Medicine (ASAM) Level 3.5 residential substance use treatment facility. Imam Decl., ¶ 31. For this work, he is required to have 24/7 access to his phone for healthcare staff to contact him, to do telehealth visits, and for on-call duties including receiving emergency calls. Imam Decl., ¶ 32. In addition, federal rules require a second login step to e-prescribe controlled medications such as ADHD medications, benzodiazepines, and buprenorphine. Imam Decl., ¶ 32. This requires an application on his phone, which can take days to set up. *Id.* Plaintiff Mansoor's laptop contains months of code that do not exist anywhere else and may require significant time and effort to rewrite from scratch. Mansoor Decl., ¶ 27. It would take days to rebuild her work setup and thousands of dollars to replace both of her devices and reset established accounts tied to her phone. Mansoor Decl., ¶¶ 27-28.

Both Plaintiffs' phones contain personal messages and photos, and other data. Imam Decl., ¶ 34; Mansoor Decl., ¶¶ 25-26. As a Muslim woman, Plaintiff Mansoor wears a hijab in public, and her phone contains photos of her without it. Mansoor Decl., ¶ 26. The prospect of those photos being viewed by strangers without her consent is extremely distressing to her. *Id.* In sum, both Plaintiffs are suffering practical hardship in addition to the ongoing violation of their constitutional rights.

## ARGUMENT

### I. PLAINTIFFS ARE ENTITLED TO EQUITABLE RELIEF AND THE IMMEDIATE RETURN OF THEIR PROPERTY UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND FEDERAL RULE OF CRIMINAL PROCEDURE 41(G)

#### *A. The Fourth Amendment Prohibits Both the Original and Ongoing Seizure of Plaintiffs' Electronic Devices, and any Search Conducted as a Result of that Unlawful Seizure*

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures[.]" U.S. Const. amend IV. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 573 U.S. 373, 381-82 (2014) (quoting *Brigham City v. Stuart*, 547 U.S, 398, 403 (2006)).[2] The reasonableness inquiry must account for the substantial privacy interests implicated by searches of modern electronic devices. *See id.* at 393-97.

---

[2] As a Lawful Permanent Resident of the United States, Plaintiff Mansoor is protected against unreasonable searches and seizures—including at the border, just like her U.S. Citizen husband. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990) (defining "'the people' protected by the Fourth Amendment" not only as U.S. citizens but "a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."); *Landon v. Plasencia*, 459 U.S. 21, 32-34 (1982) ("Once an alien gains admission to our country and begins to develop the ties that go with permanent residence, his

The Supreme Court has long held that the government possesses broad authority to inspect persons and property entering the country, so that routine searches of luggage may be conducted without a warrant, probable cause, or reasonable suspicion. *See United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985). This exception arose due to the sovereign's interest in preventing the entrance of unwanted people or contraband into the country. *See id.* at 537-38.

The circuit courts have wrestled with the obvious and significant tension arising from the government's application of the border search exception to smartphones and other electronic devices in the absence of a Supreme Court decision addressing the issue, with several of the circuits reaching different conclusions.[3] *See, e.g.*, *United States v. Cano*, 934 F.3d 1002, 1018, 1020 (9th Cir. 2019) ("Were we to give the government unfettered access to cell phones [by permitting limitless such searches at the border] we would enable the government to evade the protections laid out in *Riley* 'on the mere basis that [the searches] occurred at the border.'" (quoting *United States v. Soto-Soto*, 598 F.2d 545, 549 (9th Cir. 1979)); and "We agree with much of the Fourth Circuit's discussion of foundational principles, but we respectfully disagree with the final step" as the only permissible such search must be grounded in reasonable suspicion that a phone contains evidence of contraband); *United States v. Aigbekaen*, 943 F.3d 713, 721 (4th Cir. 2019) (requiring

constitutional status changes accordingly."). Other districts and circuits have held that "the people" mentioned in the Fourth Amendment includes Lawful Permanent Residents, who "have developed sufficient connections with the United States to be considered a part of the national community: They live and work here lawfully, and they can serve in the military." *OPAWL v. Yost*, 118 F.4th 770, 776 (6th Cir. 2024) (quoting *Bluman v. Fed. Election Comm'n*, 800 F.Supp.2d 281, 291(D.D.C. 2011), *aff'd* 565 U.S. 1104 (2012)); *Ramirez v. United States*, 81 F.Supp.2d 532, 536-37 (D.N.J. 2000) ("A lawful permanent resident alien returning to the country is entitled to Fourth Amendment protection from unlawful seizures.").

[3] A petition for certiorari asking the Supreme Court to review this very issue is currently pending, and garnered ten amicus briefs in support of the petitioner; the Court recently requested a response from the government. *See Anibowei v. Blanche*, No. 26-208 (U.S. docketed Aug. 19, 2026).

that a forensic search of a cell phone seized at the border be based on reasonable suspicion and "bear[] some nexus to the border search exception's purposes[.]"); *United States v. Touset*, 890 F.3d 1227, 1233 (11th Cir. 2018) (rejecting Fourth Circuit's rule that any kind of individualized suspicion is needed to conduct any kind of search, regardless of how invasive, of phones at the border).

Some of the circuits' assumption that the border search exception permits boundless searches of electronic devices defies the Supreme Court's explicit recognition of the privacy interests at stake in the contents of such property. Over a decade ago, in *Riley*, the Supreme Court unanimously held—in the case of a search of the contents of a smartphone conducted incident to arrest— that law enforcement may not search cell phones without a warrant, recognizing that such devices implicate privacy interests of an entirely different magnitude from ordinary physical containers "in both a quantitative and a qualitative sense." 573 U.S. at 393. And just this year, in *Chatrie v. United States*, 146 S. Ct. 2193 (2026), the Supreme Court affirmed the significant privacy interests in modern cell phones and their data and rejected the government's contention that "accessing only a short amount of cell-phone location information does not count as a Fourth Amendment search." *Id.* at 2197.

Furthermore, the traditional rationale for the border-search exception does not apply to electronic devices (in contrast to luggage). *See Riley*, 573 U.S. at 393-97 (explaining that cell phones differ "in both a quantitative and qualitative sense" from physical objects in large part because they contain an unparalleled quantity of personal information.). In contrast to contraband sealed in a person's luggage or on a traveler's person, electronic data may exist simultaneously on remote servers, already be accessible within the United States, and transmissible across borders independently of the physical movement of a device. Additionally, smartphones and laptops are

unlikely to pose an immediate, serious threat the way that explosives, firearms, criminals, or large quantities of illicit drugs can—the justification underpinning the border search exception. *Cf. United States v. Chadwick*, 433 U.S. 1, 15 n.9 (1977) ("if officers have reason to believe that luggage contains some immediately dangerous instrumentality, such as explosives, it would be foolhardy to transport it to the station house without opening the luggage and disarming the weapon.").

Regardless of the broader disagreement among the circuits concerning the constitutional limits on searches of electronic devices at the border, Plaintiffs are entitled to relief under existing Fourth Circuit precedent. *See United States v. Kolsuz,* 890 F.3d 133, 147 (4th Cir. 2018). The Fourth Circuit draws a distinction between forensic and manual searches of electronic devices at the border. Manual searches—brief searches conducted by an officer without use of external equipment—are routine and require neither individualized suspicion nor a warrant. *see United States v. Cardozo*, 181 F.4th 461, 470-71 (4th Cir. 2026). But the Fourth Circuit has held that forensic searches, involving use of external equipment to extract data, require individualized suspicion. *See id.* at 467. As the Fourth Circuit explained, unlike a manual search, a forensic search can create a "permanent, portable, and searchable duplicate of the device," allowing the government to examine its contents long after the traveler has crossed the border. *See Cardozo*, 181 F.4th at 471. Moreover, to conduct a warrantless forensic search under the border-search exception, the government must have individualized suspicion of an offense that "bears some nexus to the border search exception's purposes" of protecting national security, collecting duties, regulating entry, or preventing the importation or exportation of contraband. *Aigbekaen*, 943 F.3d at 721.

Here, CBP officers made clear that they intended to subject Plaintiffs' four electronic devices to forensic searches, informing Plaintiffs that the process could take months. Despite Plaintiffs' repeated objections and Plaintiff Imam's invocation of patient privilege, the officers confiscated all four devices without articulating any reasonable suspicion of an offense bearing a nexus to the purposes of the border-search exception. *See* Imam Decl. ¶¶ 21-27; Mansoor Decl.. ¶¶ 18-23. Nor did the officers identify any criminal investigation or other basis for the continued retention of Plaintiffs' smartphones and laptops. When Plaintiff Imam asked to speak with a lawyer, he was effectively told he had no rights whatsoever at the border. *See* Imam Decl. ¶ 20. But the government's authority at the border is not unlimited. As the Fourth Circuit has expressly recognized, "an unreasonably delayed forensic search of electronic devices at the border can render their continued seizure impermissible." *United States v. Nkongho,* 107 F.4th 373, 384 (4th Cir. 2024); *see also United States v. Pratt*, 915 F.3d 266, 271-73 (4th Cir. 2019) (holding that an unjustified 31-day delay in obtaining a warrant to search a seized cell phone violated the Fourth Amendment).

Rendering the seizure yet more unreasonable under the Fourth Amendment was the fact that, as Plaintiff Imam stated, his devices contained confidential medical records and communications relating to mental health and substance use treatment. *See* Imam Decl. ¶¶ 21, 24, 31-33. Indeed, the circumstances suggest that CBP's decision to confiscate all four devices—including those belonging to Plaintiff Mansoor—was prompted by Plaintiff Imam's refusal to disclose his passcode because of his professional obligations to protect patient confidentiality. *See* Imam Decl. ¶¶ 18-25; Mansoor Decl. ¶¶ 18-21.

The Fourth Circuit has explicitly held that patients enjoy a legitimate expectation of privacy in their medical treatment records and files. *See Doe v. Broderick*, 225 F.3d 440, 450-51 (4th Cir.

2000). This expectation arises from the fact that medical records contain intimate and private details that individuals expect will remain private and secure from unfettered, warrantless government access. *Id.* Of particular import here, in light of the substance abuse treatment Plaintiff Imam helps provide, the Fourth Circuit has pointed to federal statutory frameworks, such as 42 USCS § 290dd-2, which restrict access to substance abuse treatment records. *Id.* That is a clear indicator that such records enjoy heightened protection from government intrusion. Where the government abuses the border exception to perform non-routine forensic searches without any individualized suspicion or nexus to historic sovereign purposes of the border search exception, such as protecting national security, collecting duties, blocking the entry of unwanted persons, or preventing the import or export of contraband, *see United States v. Cardozo*, 181 F.4th 461, 467-69 (4th Cir. 2026), Fourth Circuit courts must closely scrutinize the underlying search and seizure. *See Aigbekaen*, 943 F.3d at 721.

The facts of this case also raise the concern that CBP officers may be using their border-search authority not to advance any legitimate border-related purpose, but to punish individuals for refusing to provide access to their electronic devices—when officers weren't entitled to such access anyway. As discussed, when Plaintiff Imam refused to put his passcode into his phone due to patient confidentiality concerns, the officers told him that they would then have to seize both laptops, including his wife's. *See* Imam Decl. ¶¶ 21-27. And then the day after landing at Dulles, Plaintiff Imam's Global Entry status was revoked in a nebulous letter saying that he no longer met the program's standadrds. *See* Imam Decl. ¶ 30. Taken together, these circumstances raise serious concerns that CBP's actions were punitive responses to Plaintiff Imam's refusal to surrender access to confidential patient information. The Fourth Amendment does not permit the border-search

exception to become a means of coercing compliance through the threatened or actual confiscation of travelers' personal property.

Furthermore,, CBP officers' conduct here violates even its own Directive (which Plaintiffs maintain is not consistent with the Fourth Amendment). *See* U.S. Customs & Border Prot., CBP Directive No. 3340-049B (Jan. 1, 2026), https://www.cbp.gov/sites/default/files/2026-01/cbp_directive_3340-049b_jan_2026_508.pdf (hereinafter "Directive", link last visited October 20, 2026). That Directive distinguishes "basic" from "advanced" searches of electronic devices, with the latter involving the connection of external equipment to a device to access, review, copy, or analyze its contents.[4] The Directive allows basic searches of the phone of any traveler entering the country but requires either individualized suspicion or a national security concern for an advanced search. It is not clear from the Directive alone what constitutes a valid national security justification, but it appears that in issuing it, DHS believes that it has the right to unfettered search of travelers' electronic devices, since the national security justification untethered to any individualized suspicion requirement. In fact, the seizure of Plaintiffs' smartphones indicates at least some officers consider the national security exception to belie any particularized suspicion requirement whatsoever, since CBP provided them with no explanation for the search and seizure. Whatever discretion the Directive purports to confer, it cannot override the Fourth Amendment's requirement that nonroutine border searches and seizures be supported by individualized suspicion bearing a nexus to the purposes of the border-search exception. *See Nkongho*, 107 F.4th at 382.

Further, the Directive states that CBP may not keep electronic devices for more than five (5) days absent extenuating circumstances and a supervisor's approval. *See* Directive § 5.4.1.1.

---

[4] It appears that the Directive's basic/advanced distinction is similar if not identical to the Fourth and Ninth Circuit's manual/forensic distinction. *See* CBP Directive, 3.3-3.4; *Cardozo*, 181 F.4th at 1470.

Yet here, Plaintiffs were told their devices might be retained for months and provided no timeline for their return. *See* Imam Decl. ¶¶ 23, 26-27; Mansoor Decl. ¶¶ 19, 22-23. The Supreme Court has recognized that the reasonableness of a seizure depends in part on its duration and the government's diligence, and that uncertainty concerning the return of seized property compounds the intrusion on possessory interests. *See United States v. Place,* 462 U.S. 696, 709-10 (1983).

Indeed, this Court recently confronted similar Fourth Amendment concerns in a case involving seizure of a journalist's smartphones upon his return from Iran. During a July 29, 2026 hearing, the Court observed that under Fourth Circuit precedent, "a search warrant would be required for [a forensic search] into a cell phone." *Blumenthal v. Mullin*, No. 1:26-mc-16, Tr. 7/29/26 at 2–3, 5, 8 (E.D. Va.). The court subsequently authorized limited discovery concerning the circumstances surrounding the seizure.[5] *Id.* The same concerns warrant judicial scrutiny here, where CBP confiscated four electronic devices, provided no return timeline, indicated that accessing their contents could take months, and may have been retaliatory.

Given the government's failure to impose proper controls upon its employees and officers in this context, it is incumbent upon the courts to do so.

*B. This Court Should Order the Immediate Return of Plaintiffs' Two Smartphones and Two Laptops Under Federal Rule of Criminal Procedure 41(g)*

Federal Rule of Criminal Procedure 41(g) provides that, "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for [its]

---

[5] CBP appears to be escalating its use of retaliatory and viewpoint-discriminatory searches and seizures of smartphones. Undersigned counsel, the American-Arab Anti-Discrimination Committee, (ADC) is representing Mr. Blumenthal as well as another plaintiff, a Palestinian-American attorney, whose phone was seized at Newark Airport in New Jersey. *See Shehadeh v. Mullin*, No. 2:26-cv-12715 (D.N.J. Sept. 26, 2026). Undersigned counsel has received numerous reports from other people in similar situations but has been unable to file actions in every case due to resource limitations. The gravity of this development demonstrates the necessity of judicial intervention and placement of constraints upon the government.

return." Fed. R. Crim. P. 41(g). The motion must be filed in the district where the property was seized, and if the Court grants the motion, it "must return the property to the movant," subject only to reasonable conditions necessary to protect the Government's access to the property for any later lawful use. *Id.*

Rule 41(g) affords an equitable remedy to individuals whose property continues to be retained by the Government outside the context of an ongoing criminal prosecution. *See United States v. Johnson*, 683 F. App'x 241, 248 (4th Cir. 2017); *United States v. Hoffman*, No. 1:18-mc-00016, 2018 U.S. Dist. LEXIS 194544, at *2 (E.D. Va. Nov. 14, 2018). The Advisory Committee has explained that "[n]o standard is set forth in the rule to govern the determination of whether property should be returned," and that "[r]easonableness under all of the circumstances must be the test when a person seeks to obtain the return of property." Fed. R. Crim. P. 41 advisory committee's note to 1989 amendment.

A Rule 41(g) motion ordinarily should be denied only in the following circumstances: the person seeking return of the property is not lawfully entitled to it; the property is contraband or subject to forfeiture; or the government's need for the property as evidence continues. *See United States v. Soza*, 599 F. App'x 69, 70 (4th Cir. 2015) (quoting *Jackson v. United States*, 526 F.3d 394, 396 (8th Cir. 2008)). Likewise, if the United States lacks actual or constructive possession of the property, it is not the proper party against whom Rule 41(g) relief may be sought. *United States v. Gomez*, 382 F. App'x 344, 345 (4th Cir. 2010).

None of those circumstances is present here. Plaintiffs lawfully owned all electronic devices at issue. The devices are neither contraband nor subject to forfeiture, and, to Plaintiffs' knowledge, there is no pending criminal investigation, criminal prosecution, or warrant authorizing their continued seizure or search. Nor has the Government identified any continuing

evidentiary need that could justify its ongoing retention of Plaintiffs' devices and apparent conviction that it can simply keep them for as long as it desires, or any search that could lawfully be conducted of them.

Accordingly, Rule 41(g) authorizes this Court to exercise its equitable jurisdiction and order the immediate return of Plaintiffs' electronic devices, together with any information, data, or copies obtained from them. It should exercise this jurisdiction in light of the Government's lack of legitimate interest in continuing to confiscate these items, and the constitutional violations detailed above.

## II. RETURN OF THE PHYSICAL DEVICES DOES NOT MOOT THIS MOTION

In *Blumenthal*, the government returned the phones the day after the motion was filed and argued that the action was thereby moot; likewise, in Shehadeh, the government returned the phone in question a couple of weeks after and before any hearing or order was issued. The *Blumenthal* Court declined to accept a conclusory declaration and ordered discovery into who handled the devices, what was attempted, and what was obtained. Tr. 7/29/26 at 5–8. Plaintiffs here request the same: any mootness assertion must be supported by sworn, specific, first-hand testimony subject to examination, with chain-of-custody and forensic-tool logs.

## RELIEF REQUESTED

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion pursuant to Federal Rule of Criminal Procedure 41(g) and:

A. Order Defendants to immediately return Plaintiffs' electronic devices—two iPhone 16 smartphones and two laptops, one Microsoft Surface Pro and one Micro-Star International;

B. Order Defendants to return and destroy all copies, images, extractions, and derivative data obtained from the devices, and provide evidence as to what precisely was done to

and with the devices from all individuals who handled, examined, or attempted to examine them, as well as to provide the identities of those individuals so that their testimony may be subject to examination, and to explicate every tool or process applied, every attempt to access data, and documented justification for any advanced search;

C. If any data was obtained, order that privilege review be conducted by the Court, not Defendants;

D. Enter an immediate standstill order prohibiting Defendants and anyone acting in concert with them from accessing, reviewing, imaging, or searching the devices or any data from them pending further order;

E. Set a hearing within 48 hours of the filing of this Motion;

F. Award fees and costs under 28 U.S.C. § 2412; and

G. Grant such other relief as is equitable and just.

Dated: October 20, 2026

Respectfully submitted,

/s/ Hassan M. Ahmad__________
Hassan Ahmad, Esq. (VSB 83428)
THE HMA LAW FIRM, PLLC
6 Pidgeon Hill Dr, Suite 330
Sterling, VA 20165
Tel: (703) 964-0245
hma@hmalegal.com

/s/Jenin Younes________
Jenin Younes* (*pro hac vice pending*)
AMERICAN-ARAB ANTI-DISCRIMINATION COMMITTEE
910 17th Street Northwest, Suite 400
Washington, DC 20006
Telephone: (202) 244-2990
jyounes@adc.org
*Designated Counsel for Service

*Attorneys for Plaintiff*