**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| MUHAMMAD NUMAAN IMAM; and KHADIJAH MANSOOR,<br><br>*Plaintiffs*,<br><br>v.<br><br>MARKWAYNE MULLIN, *in his official capacity as Secretary of the Department of Homeland Security*,<br><br>*Defendant*. | **CASE NO.** ______________ |

**DECLARATION OF PLAINTIFF KHADIJAH MANSOOR IN SUPPORT OF MOTION FOR RETURN OF ELECTRONIC DEVICES UNLAWFULLY SEIZED BY CUSTOMS AND BORDER PROTECTION, AND FOR RETURN OF ANY CONTENT OBTAINED THEREFROM, PURSUANT TO FED. R. CRIM. P. 41(g)**

I, Khadijah Mansoor, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge.

1. I have been a United States permanent resident since June 2024. I am a citizen of Pakistan. I am 25 years old. I have been married to Muhammad Numaan Imam for approximately two years. We have a 12-month-old baby.

2. I am a resident of Florida working as a software engineer in Virginia.

3. I have never been arrested or charged with any crime.

4. To my knowledge, neither I nor Muhammad are the subject of any pending criminal investigation, and there is no search warrant, arrest warrant, or other judicial process authorizing the seizure or continued retention of my electronic devices.

5. Muhammad and I regularly travel internationally for pleasure. During the past five years, we have traveled to countries including Canada, Pakistan, Azerbaijan, and Saudi Arabia.

6. On October 15, 2026 we departed from Dulles International Airport in Virginia for a family trip to Istanbul, Turkey with our 12-month-old son. We traveled on Turkish Airlines Flight Number TK188, which took approximately nine hours.

7. On October 16, 2026 we arrived in Istanbul and I realized that I had forgotten my United States Permanent Resident card at home.

8. The Turkish border authorities did not allow me to enter Turkey with only my Pakistani passport. They did not accept a photo of my United States permanent resident card on my phone. As a result, I had to return home to the United States.

9. As United States citizens, Muhammad and our son were both allowed to enter Turkey but chose to return to the United States with me.

10. After approximately ten hours at the Istanbul Airport first discussing our situation with Turkish authorities and then booking and waiting for a flight home, Muhammad, our baby, and I traveled from Istanbul, Turkey back to Dulles International Airport in Virginia on Turkish Airlines Flight Number TK0007, which took approximately twelve hours.

11. On October 16, 2026 at approximately 9:45 p.m. Eastern Daylight Time, we arrived at Dulles International Airport in Virginia after more than 30 hours of travel with our baby son. We were exhausted from the long journey, caring for our baby in uncomfortable circumstances, and lack of sleep.

12. When we entered customs screening at Dulles International Airport, a United States Customs and Border Protection (CBP) officer asked for my Pakistani passport and Muhammad's American passport. He questioned us together. We told the CBP officer that I had forgotten my

permanent resident card, which forced us to return home. The CBP officer informed Muhammad that he had been flagged in the CBP system. The CBP officer placed my passport and Muhammad's passport in a locked box. He instructed us to go to a secondary screening area.

13. The secondary screening room of CBP was a controlled waiting-and-interview area. It had separate spaces for more private interviews or additional examinations. There were approximately 10 CBP officers present. One of the CBP officers took Muhammad aside and asked him questions for approximately 20 minutes.

14. After questioning, CBP officers took Muhammad to collect our baggage and bring it to the secondary screening room where I was waiting with our baby.

15. While Muhammad was getting the baggage, a CBP officer asked where my permanent resident card was and I explained again that I had forgotten it at home, which resulted in the Turkish authorities not allowing me to enter Turkey. That CBP officer went to speak with another CBP officer. After a few minutes, the CBP officer who had questioned me returned and handed my Pakistani passport back to me.

16. When Muhammad returned with our baggage, three CBP officers then took us to a space within the secondary screening room with our two checked-in bags, two carry-on bags, a baby bag, and a bag containing a baby stroller. The officers inspected each item and put the stroller bag through a baggage scanner machine. The CBP officers expressed sympathy that our trip had been cut short and that we had to return home.

17. One CBP officer was inspecting my baggage and asking me questions while I could see Muhammad in another space with two CBP officers. The CBP officer asked me questions about where I was traveling, why I traveled there, how long I was there, who I was visiting, and whether I was planning on returning to Turkey. I answered all their questions.

18. Then a CBP supervisor was brought to the area to persuade Muhammad to give up the passcode to his phone. When Muhammad refused, one of the CBP officers present said, "okay, we are going to have to take the laptops then." Both my laptop and Muhammad's laptop were in one of the carry-on bags. The officers told me and Muhammad to wait. While waiting, Muhammad and I explained that one of the two laptop computers belonged to me.

19. Approximately thirty minutes later, a second supervisor arrived and told us that they could do things the easy way or the hard way. That supervisor said that they could access all the information on our devices and that the process might take months.

20. Muhammad repeated his concerns about protecting his patients' confidentiality and that he was declining to provide the passcode to his phone.

21. A CBP officer then approached us, where the officer instructed me to surrender my phone and passport, stating that I was not allowed to keep my phone. He did not ask for my passcode after forcing me to surrender my phone. He looked at my passport and wrote something down.

22. CBP officers kept my iPhone 16, my Microsoft Surface Pro laptop computer, Muhammad's iPhone 16, and his MSI laptop computer. They did not ask for our consent to keep these devices. Muhammad repeatedly said that he did not give consent for anyone to take or keep our devices.

23. We were then sent to the seating area to wait. After waiting approximately 10 minutes, the CBP officers provided each of us with receipts and contact information to inquire about our devices. They did not indicate how long they would hold our devices. At this point, they returned both my passport and my husband's passport.

24. After approximately three hours of questioning and inspections, CBP officers released me, Muhammad and our baby son at approximately 1:00 a.m. on October 17, 2026. Without our phones, we had to contact concerned family members, rent a car without a reservation, and drive four hours home without phone navigation.

25. My phone contains family photos, including our son's first year, contacts, personal messages, and a photo of my United States permanent resident card.

26. As a Muslim woman, I wear the hijab as an important expression of my faith and religious beliefs. My phone contains personal photographs of me without my hijab, which I consider private because I normally wear the hijab in public. The possibility of having these photographs viewed by others without my consent made the prospect of surrendering my phone particularly distressing.

27. My laptop contains months of code that only exists on my laptop and may require significant time and effort to rewrite from scratch. It would take many days for me to rebuild my work setup, including tools, settings and test systems on a new laptop.

28. It would cost thousands of dollars and many hours to replace my phone and laptop and reset my established accounts that are tied to my phone.

Dated:

10/19/2026

Signed:

Khadeejah Mansoor.